**Opinion issued August 4, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00536-CV

_____

**TINA THUY TRUONG AND TINA 1960 NAILS SALON, INC., Appellants**

**V.**

**HOA HIEP HOANG, Appellee**

---

**On Appeal from the 245th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-54609**

---

## MEMORANDUM OPINION

Appellants, Tina Thuy Truong ("Truong") and Tina 1960 Nails Salon, Inc. ("Salon"), challenge the trial court's division of the marital estate in connection with Truong's suit for divorce from appellee, Hoa Hiep Hoang ("Hoang"). In two issues, appellants contend that the trial court erred in (1) awarding a money judgment in the

amount of $384,307 to Hoang representing his community property interest in the income generated by the Salon, Truong's separate property, and (2) rendering judgment against the Salon because Hoang waived his fraud claims against the Salon and there were no other legal or factual bases for holding the Salon liable.

We affirm in part and reverse and remand in part.

## Background

In 2014, Truong opened a nail salon on FM Road 1960 in Humble, Texas. Truong incorporated the Salon as "Tina 1960 Nails Salon, Inc." in 2018. Truong is the Salon's sole owner.

On August 30, 2019, Truong and Hoang married. There were no children of the marriage.

### A.      Pretrial Proceedings

On September 9, 2020, Truong filed a petition for divorce. Her fourth amended petition—the live pleading at the time of trial—alleged, among other things, that the Salon was her separate property and there was no community property. She further asserted claims of fraud and civil theft against Hoang.

Hoang filed a counterpetition for divorce. In the second supplement to his second amended counterpetition, Hoang alleged that Truong had committed fraud on the marital estate by using the Salon as her personal "piggy bank," intermingling her personal and corporate assets, and depleting the community estate. Hoang

2

requested that the trial court divide the marital estate in a just and right manner. Hoang's supplemental pleading added the Salon as a party.

The trial court subsequently appointed Michael D. Stein ("Stein") as receiver "for the day-to-day management and accounting of the business receipts." Truong moved several times to dissolve the receivership.[1]

In June 2023, Truong and Hoang each filed an inventory and appraisement. Truong's inventory and appraisement listed the Salon as her separate property with a fair market value of -$350,000 (based on its value of $150,000 minus liabilities of $500,000); it did not disclose any business earnings. Honag's inventory and appraisement listed the Salon as community property and its value, earnings, and liabilities as "unknown."

Stein filed his final report with the trial court on March 20, 2024. The report set forth the history of the case and the documents reviewed by Stein. The thirty-four page report concluded:

> As shown above, Truong has inaccurately represented the cash receipts . . . . Receiver can only speculate as to how much money the nail salon

---

[1] Truong also filed a petition for writ of mandamus and a petition for writ of prohibition asking this Court to order the trial court to vacate the existing orders appointing a receiver and to prohibit the trial court from entering further orders appointing a receiver. Truong filed a supplemental petition asking this Court to order the trial court to dissolve the existing order appointing a receiver, prohibit Hoang from seeking a receiver to manage the affairs and property of Truong and the Salon, and prohibit the receiver from taking further action. This Court later granted Truong's unopposed motions to dismiss both petitions. *See In re Truong*, Nos. 01-22-00253-CV, 01-22-00254-CV, 2022 WL 1572387, at *1 (Tex. App.—Houston [1st Dist.] May 19, 2022, orig. proceeding) (mem. op.).

earned for any given year. None of Truong's representations can be verified, or corrected, because Truong has refused to produce complete bank statements and documentation of the nail salon's income or expenses.

## B.    Trial

The trial court conducted a bifurcated trial on March 21, 2024. In the first phase, the jury determined that Truong and Hoang were married on August 30, 2019. In the second phase, the trial court held a bench trial to determine the division of the parties' marital estate.

At the beginning of the hearing, the parties agreed that the Salon was Truong's separate property. The trial court stated that it would determine the Salon's income during the relevant time period and the portion of the income to which Hoang was entitled as his share of the community property.

Truong's expert, William Brian Stewart, Jr. ("Stewart"), was the only witness called to testify. Stewart testified that he reviewed Truong's individual income tax returns and the Salon's income tax returns, but he did not perform an audit of the business. Stewart testified generally about the difference between a Form 1040, an individual's income tax return, and an 1120-S, an S-corporation's income tax return. He testified that the Salon is an S-corporation. According to Stewart, a corporation's profits are taxed to the corporation and all other income "flows through" and is taxed to the individual shareholder. He testified that the top line of an 1120-S corporate income tax return shows the corporation's gross revenue. Stewart testified that

4

business expenses, which are made up of cost of goods sold and administrative expenses, are deducted from a corporation's gross revenue. Stewart testified that labor expenses are deducted as a business expense and are typically listed at the back of an 1120-S return. An independent contractor's income is reported on a 1099 form. After noting that the Salon's 1099s were amended in 2021 to reflect what was paid to its non-contract employees in 2019 and 2020, the trial court asked Stewart how the information in the amended 1099s could be verified. Stewart responded that the Salon's 1099s could only be verified with an audit, but no audit was performed in this case.

In its oral rendition, the trial court stated:

The Court is going to find that there's insufficient evidence to support [labor expenses] because these payments were made in cash, and what you-all have provided as a part of your exhibits is documentation that it's been revised, and there's no way to track what was originally paid because this is cash in/cash out. So the Court will have to give what the Court deems to be reasonable and necessary for contract labor because it doesn't tell me how many, it doesn't list them or anything else. All I know is I have amended documents that were amended some two years after that was supposedly submitted.

When the trial court asked the Salon's counsel how the non-contract employees were paid, she replied that they were paid by percentage, "60/40. The owner get[s] 40 percent." The following exchange then occurred:

[Court]: Yeah, no. Is there something in writing that you have, because the Court doesn't find that reasonable? I can see the owner getting 60 percent and [the non-contract employees] getting 40 --

5

[Counsel]: She has the ledger at home, Your Honor.

. . . .

[Court]: -- but we don't have any cash receipts to show me what she paid them.  The Court has already found that those are not legally sufficient or even factually sufficient because they've been amended, and the Court doesn't know because they were paid cash.  There's been no evidence or any testimony about what they were paid.  I'm only asking now out of courtesy so that I can try and figure this out.  So even if we do the 60/40 split -- let's do that for you -- okay? -- because I'm being fair.

## C.    Final Decree of Divorce

The trial entered the final decree of divorce on April 26, 2024.  The decree stated, in pertinent part:

### Division of Marital Estate

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party.

The Court finds that the financial inventory and appraisement that was filed did not disclose any income with regard to the business earnings.  The inventory and appraisement filed by [Truong] did not include any of those things.  It was left blank.

The Court finds that it can only go based on the business tax returns that are here in front of the Court with regard to only the business income earned between 2019 and the end of 2023.

The Court finds that this business is a cash business, and also the documents have not been audited, not by the federal government, not by an auditor here in this case.

The Court finds that in 2019 for September, October, November, and December [Hoang] would be entitled to $40,172.00 as his share of the community estate.

6

The Court finds for 2020, 12 full months, [Hoang] would be entitled to $90,558.00 as his share of the community estate.

The Court finds for 2021, 12 full months, [Hoang] would be entitled to $122,637.00 as his share of the community estate.

The Court finds for 2022, 12 full months, [Hoang] would be entitled to $65,739.50 as his share of the community estate.

The Court finds for 2023, 12 full months, [Hoang] would be entitled to $65,200.50 as his share of the community estate.

The Court finds that the total amount [Hoang] would be entitled to from the business during the years of 2019, 2020, 2021, 2022, and 2023 as listed above for each year would be $384,307.00.

The Court finds that the taxable income for 2019, 2020, 2021, 2022, and 2023 for the business is for the Federal government to determine.

The Court finds that the attorneys for [the Salon] only called Mr. Bill Stewwart [sic] on behalf of the business to give testimony.

Appellants filed a motion for new trial, which was overruled by operation of law.

## Division of Marital Estate

In their first issue, appellants assert that the trial court erred in awarding Hoang a money judgment in the amount of $384,307, representing his community property interest in the income generated by the Salon during the parties' marriage. They argue that the trial court ignored all of the Salon's reported business expenses except its labor costs, and that it applied an arbitrary multiplier to the Salon's gross receipts to determine labor costs for which there was no evidence.

7

## A. Standard of Review and Applicable Law

In a decree of divorce, a trial court must order a division of the marital estate in a manner that the court deems just and right, having due regard for the rights of each party. *See* TEX. FAM. CODE ANN. § 7.001. A trial court is afforded broad discretion in effecting a just and right division. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *see also* TEX. FAM. CODE ANN. § 7.001. That division will not be reversed on appeal unless the trial court clearly abused its discretion. *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018); *see also Murff*, 615 S.W.2d at 700 ("Wide latitude and discretion rests in these trial courts and that discretion should only be disturbed in the case of clear abuse."). To establish a clear abuse of discretion, the complaining party must show that the trial court acted arbitrarily or unreasonably and without reference to any guiding principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds for asserting error but are relevant factors in assessing whether a trial court abused its discretion. *Smith v. Karanja*, 546 S.W.3d 734, 737–38 (Tex. App.—Houston [1st Dist.] 2018, no pet.). In determining whether an abuse of discretion exists because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in its

8

application of that discretion. *Kelly v. Kelly*, 634 S.W.3d 335, 346 (Tex. App.—Houston [1st Dist.] 2021, no pet.). In conducting a legal sufficiency review, an appellate court reviews all the evidence in a light favorable to the trial court's finding, crediting favorable evidence if a reasonable fact finder could do so and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In a factual sufficiency review, we consider all the evidence for and against the challenged finding and set the finding aside only if the evidence is so weak as to make the finding clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Separate property consists of a spouse's real or personal property owned before marriage or acquired during marriage by gift, devise, or descent. *See* TEX. FAM. CODE ANN. § 3.001; *see also* TEX. CONST. art. XVI, § 15. Community property consists of property other than separate property that is acquired by either spouse during the marriage. TEX. FAM. CODE ANN. § 3.002; *Jimenez v. Jimenez*, No. 01-23-00087-CV, 2025 WL 1160683, at *2 (Tex. App.—Houston [1st Dist.] Apr. 22, 2025, pet. denied) (mem. op.). However, when separate property produces income, and that income is acquired by a spouse during marriage, it is community property. *See Jiminez*, 2025 WL 1160683, at *2.

9

**B.      Valuation of Salon's Income**

In their first issue, appellants assert that the trial court erred in its valuation of the Salon's income produced during the parties' marriage.

Appellants assert that the trial court considered four items in determining the value of the Salon's income: (1) the receiver's report;[2] (2) Troung's inventory and appraisement; (3) the testimony of Stewart, Troung's expert; and (4) the Salon's tax returns.[3]   In support of their assertion that the trial court erred in its valuation, appellants point to Stewart's testimony that a company's income flows through to the marital estate and should be calculated as gross revenues less business expenses. According to appellants, the Salon's tax returns from 2019 to 2023 show the following:

---

[2]      Neither party offered the receiver's report into evidence at trial.

[3]      The Salon's tax returns were attached to appellants' joint trial exhibit list which was filed with the trial court and is included in the clerk's record.  Generally, documents attached to pleadings are not evidence unless they are offered and admitted as evidence by the trial court.  *Moccia v. Benn*, No. 01-23-00089-CV, 2024 WL 3608198, at *5 n.5 (Tex. App.—Houston [1st Dist.] Aug. 1, 2024, no pet.) (mem. op.).  On appeal, however, Hoang does not challenge appellants' reliance on the Salon's tax returns attached to the pleadings and, in fact, states in his brief that the trial court reviewed the tax returns.  Additionally, the trial court stated at trial that "the tax returns were submitted."  We therefore assume without deciding that the trial court considered these documents in rendering its final decree of divorce. Accordingly, we will also consider these documents on appeal.

**2019**: The Salon reported gross revenue of $401,720. After business expenses were deducted,[4] the Salon's total income was $40,438. According to Truong, because the parties were only married for four months in 2019, the community estate's interest—i.e., the income earned during the marriage—was $13,479 ($40,438 ÷ 12 x 4) of which Hoang was entitled to $6,740.

**2020:** The Salon reported gross revenues of $301,861. After business expenses were deducted,[5] the Salon's total income was $28,787, of which Hoang was entitled to $14,394.

**2021:** The Salon reported gross revenues of $408,790. After business expenses were deducted,[6] the Salon's total income was $43,981, of which Hoang was entitled to $21,991.

---

[4]    The Salon's 2019 tax return and attached information page listed the following deductions: contract labor of $222,126; rent of $44,367; cost of goods sold of $42,438; debt service of $17,334; credit card charges of $9,435; electricity of $7,801; telephone expenses of $2,888; insurance expenses of $2,833; general supplies of $2,270; internet expenses of $2,017; gas expenses of $1,897; trash expenses of $1,200; and other business expenses, each under $1,000, for toll roads, property tax, and sign permits.

[5]    The Salon's 2020 tax return and attached information page listed the following deductions: contract labor of $133,455; rent of $47,677; cost of goods sold of $31,447; depreciation of $20,452; debt service of $17,213; credit card charges of $5,974; electricity of $5,480; business car repair of $3,205, internet and telephone expenses of $2,138; insurance of $1,798; car insurance of $1,257; and various other expenses, each under $1,000, including alarm, various bank expenses, toll roads, new door keys, sign permits, fire department, credit report, gas, and licensing.

[6]    The Salon's 2021 tax return and attached information page listed the following deductions: contract labor of $178,716; cost of goods sold of $46,913; rent of

**2022:** The Salon reported gross revenues of $219,132. After business expenses were deducted,[7] the Salon's total income was negative $20,303, of which Hoang was entitled to negative $10,152.

**2023**: The Salon reported gross revenues of $217,335. After business expenses were deducted,[8] the Salon's total income was $27,142, of which Hoang was entitled to $13,571.

Appellants assert the trial court had sufficient evidence to determine the value of the Salon's income during the parties' marriage, but it ignored the evidence. They

---

$44,497; depreciation of $20,452; legal fees of $18,200; debt service of $18,108; credit card charges of $7,876; meals and holiday gifts of $6,906; electricity of $6,738; telephone and internet of $3,078; insurance of $2,965; tools, masks, and uniform expenses totaling $2,320; gas expenses of $2,310; trash service of $1,403; cleaning and maintenance of $1,240; and various business expenses, each under $1,000, including alarm, mail expenses, toll roads, bookkeeper expenses, sign permits, fire department, property taxes, and laundry.

[7]   The Salon's 2022 tax return and attached information page listed the following deductions: contract labor of $104,118; rent of $44,500; depreciation of $20,452; cost of goods sold of $12,213; cleaning and maintenance costs of $9,125; meals, holiday gifts, and entertainment of $8,179; electricity of $7,450; legal fees of $7,000; telephone and internet of $6,239; credit card charges of $5,048; insurance of $4,718; gas of $2,989; general supplies of $2,509; trash of $1,578; property taxes of $1,476; and other expenses, each under $1,000, including alarm, mail expenses, bookkeeper expenses, sign permits, fire department fees, uniforms and laundry, and license renewal.

[8]   The Salon's 2023 tax return and attached information page listed the following deductions: contract labor of $97,345; rent of $46,215; cost of goods sold of $9,914; electricity of $6,630; insurance of $6,269; telephone and internet of $4,821; credit card charges of $3,812; cleaning and maintenance costs of $3,722; gas of $3,180; trash of $2,188; meals and entertainment of $2,092; tolls of $1,412; and other expenses, each under $1,000, including alarm, mail expenses, bookkeeper expenses, fire department fees, property taxes, and uniforms and laundry.

argue that the trial court started in the right place, i.e., with the Salon's gross receipts, but it failed to consider any expenses other than labor expenses, ignoring the cost of goods sold, rent, debt service, utilities, insurance, permitting, credit card charges, general supplies, depreciation, and other expenses claimed by the Salon each year.

As the parties seeking to reduce the value of the community property income by claiming business expenses, appellants bore the burden of proving these expenses. *See generally Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982) (noting party claiming right of reimbursement had burden of pleading and proving expenditures and improvements were made and were reimbursable); *Liu v. Li*, No. 14-23-00810-CV, 2025 WL 1936929, at *7 (Tex. App.—Houston [14th Dist.] July 15, 2025, pet. denied) (mem. op.) (stating burden of overcoming community property presumption is on party asserting otherwise); *Warriner v. Warriner*, 394 S.W.3d 240, 247 (Tex. App.—El Paso 2012, no pet.) (stating party attacking characterization of property bears burden of proof to overcome community property presumption). Truong did not testify at trial. Stewart, Truong's expert and the sole witness at trial, provided no testimony about the Salon's income or its business expenses. Instead, he testified generally about the difference between an individual's 1040 personal income tax return and an S-corporation's 1120-S corporate income tax return, and that business expenses are made up of costs of goods and administrative expenses and are deducted from a corporation's gross

13

revenue. Truong's inventory and appraisement did not disclose any income with regard to the Salon's business earnings. As the Salon's sole owner, Truong handled the Salon's day-to-day operations and was in a position to provide the trial court with financial documents supporting the Salon's claimed business expenses. She did not. And while the Salon's tax returns included an additional page listing business expense deductions, appellants presented no supporting documentation of those expenses such as receipts, bank statements, ledgers, or other transactional records to substantiate the claimed business expenses. *See e.g.*, *Viera v. Viera*, 331 S.W.3d 195, 207 (Tex. App.—El Paso 2011, no pet.) (concluding husband's testimony and lack of supporting documentation, such as account statements, bank records, or employment payroll records, were insufficient to prove that federal pension account was his separate property); *Osorno v. Osorno*, 76 S.W.3d 509, 512 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (determining that in absence of deposit slips and bank records tracing source of funds in husband's separate property accounts, husband's testimony was insufficient to overcome community property presumption); *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 354 (Tex. App.—Austin 2002, pet. denied) (finding husband's testimony and exhibits offered into evidence failed to provide account numbers, statements of accounts, dates of transfers, amounts transferred into and from accounts, or sources of funds, to support claim that brokerage and retirement accounts were his separate property); *cf. Zagorski v.*

14

*Zagorski,* 116 S.W.3d 309, 316–17 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding sufficient evidence established that husband's account funds were his separate property where husband called three witnesses who testified regarding existence of husband's bank account prior to marriage and identified source of funds in account, and documentary evidence concerning account was presented to trial court). In the absence of any supporting documentation, the trial court did not abuse its discretion in failing to deduct the claimed business expenses.

Appellants also assert that the trial court, in calculating labor costs, arbitrarily multiplied the Salon's gross receipts by 0.6 (instead of considering the labor costs reflected on the tax returns) and then divided the net income in half to determine Hoang's share of the community estate as follows:

| Tax Year | Gross Receipts | Net Revenue | Hoang's Half |
|----------|---------------|-------------|--------------|
| 2019 | $401,720 | $241,032 | $40,172[9] |
| 2020 | $301,861 | $181,116 | $90,558 |
| 2021 | $408,790 | $245,274 | $122,637 |
| 2022 | $219,132 | $131,479 | $65,740 |
| 2023 | $217,335 | $130,401 | $65,200 |

[9]    Because the evidence showed that the parties were married for four months in 2019, the trial court divided the net revenue by 12 (twelve months), multiplied by 4 (four months of marriage), and divided it in half to calculate Hoang's share of the community estate.

At trial, the court asked Stewart about 1099s, which report a non-contract employee's income, in an effort to determine the Salon's labor costs. The court noted that the Salon's 1099s were amended in 2021 to reflect what was paid to the independent contractors in 2019 and 2020. When the trial court asked Stewart how the information in the amended 1099s could be verified, Stewart responded that it could only be verified with an audit, but that no audit was performed.

The trial court concluded that there was insufficient evidence to support the claimed labor expenses. It stated:

> [B]ecause these payments were made in cash, and what you-all have provided as a part of your exhibits is documentation that it's been revised, and there's no way to track what was originally paid because this is cash in/cash out. So the Court will have to give what the Court deems to be reasonable and necessary for contract labor because it doesn't tell me how many [employees], it doesn't list them or anything else. All I know is I have amended documents that were amended some two years after that was supposedly submitted.

The following exchange then took place:

> [The Court]: How much were [the non-contract employees] paid per hour?
>
> . . . .
>
> [Salon's Counsel]: It pays by percentage, Your Honor.
>
> [The Court]: What was the percentage?
>
> [The Interpreter]: 60 percent or 100 percent.
> [The Court]: You don't get to do 60 and 100 percent. That's 160 percent. It's only a hundred.
>
> [Salon's Counsel]: 60/40. The owner get 40 percent.

16

[The Court]: Yeah, no.  Is there something in writing that you have, because the Court doesn't find that reasonable?  I can see the owner getting 60 percent and them getting 40 --

[Salon's Counsel]: She has the ledger at home, Your Honor.

[The Court]: -- but we don't have any cash receipts to show me what she paid them.  The Court has already found that [the 1099s] are not legally sufficient or even factually sufficient because they've been amended, and the Court doesn't know because they were paid cash.  There's been no evidence or any testimony about what they were paid.  I'm only asking now out of courtesy so that I can try and figure this out.  So even if we do the 60/40 split -- let's do that for you -- okay? -- because I'm being fair.

The trial court found that the Salon was a cash business, it paid its non-contract employees based on percentage, and the Salon received 60% of the gross receipts and the non-contract employees received 40% of the gross receipts.  The trial court then multiplied the Salon's gross receipts each year between 2019 and 2023 by 0.6 to determine the Salon's yearly income and then divided that figure in half to determine Hoang's portion of the community property.

We find no evidence in the record to support the trial court's determination that the Salon received 60% and the non-contract employees received 40% of the gross receipts.  Counsel's statement to the trial court that the percentage was "60/40" and "[t]he owner get[s] 40 percent" is not evidence.  *See Ardmore, Inc. v. Rex Grp., Inc.*, 377 S.W.3d 45, 62 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (noting unsworn statements of counsel generally do not constitute evidence); *In re J.T.G.*,

No. 14-10-00972-CV, 2012 WL 171012, at *15 (Tex. App.—Houston [14th Dist.] Jan. 19, 2012, pet. denied) (mem. op.) (concluding attorney's comment in response to trial court's question "was not sworn testimony by a witness" and did not constitute evidence).

We conclude that the trial court did not err in failing to deduct the claimed business expenses from the Salon's gross receipts about which appellants complain because there was insufficient evidence to support the claimed expenses. However, we conclude that the trial court erred in calculating the Salon's labor costs by applying a multiplier of 0.6 because there was no evidence upon which to exercise its discretion to find that the Salon received 60% of the gross receipts and non-contract employees received 40% of the gross receipts. We therefore hold that the trial court abused its discretion in awarding Hoang a money judgment for $384,307, representing his community property interest in the income generated by the Salon during the parties' marriage.

We sustain appellants' first issue.[10]

---

[10] In light of our disposition of this issue, we do not address appellants' second issue complaining that the trial court erred in rendering judgment against the Salon. *See* TEX. R. APP. P. 47.1.

18

## Conclusion

We reverse the portion of the final decree of divorce dividing the marital estate and remand the case to the trial court for a new property division of the marital estate.[11] We affirm the trial court's decree in all other respects.

Kristin M. Guiney
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Guiney.

---

[11] *See Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985) (stating when there is reversible error affecting just and right division of community estate, court of appeals must remand community estate for new division).